UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUXOTTICA GROUP S.p.A.,
*an Italian Corporation*, et al.,

                              Plaintiffs,

v.

WAFA ALI, INC., et al.,

                              Defendants.
_____

Case # 19-CV-6582-FPG

DECISION AND ORDER

**INTRODUCTION**

Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. (together, the "Luxottica Parties") brought this action against Defendants Wafa Ali, Inc., Ali Saleh, Carmelo Gimeli, and Does 1-10. ECF No. 1. They asserted three claims: (1) trademark infringement under 15 U.S.C. § 1114(1)(a); (2) false designation of origin and false advertising under 15 U.S.C. § 1125(a); and (3) unfair competition under New York state law. *Id.* The summonses and affidavits of service for the named Defendants were returned as executed in September 2019. ECF Nos. 5–7. Only Gimeli answered the summons, ECF No. 8; Wafa Ali, Inc. and Saleh (together the "Wafa Ali Parties") did not answer or otherwise appear in this action. The Luxottica Parties filed for clerk's entry of default against the Wafa Ali Parties on October 2, 2019, ECF No. 10, and the Clerk of Court entered default on October 3, 2019, ECF No. 11.

The Luxottica Parties moved for default judgment against the Wafa Ali Parties on April 22, 2020. ECF No. 20. On August 17, 2020, the Court denied the Luxottica Parties' motion because the alleged wrongful conduct and liability of the Wafa Ali Parties was intertwined with the appearing defendant, Carmelo Gimeli. ECF No. 24. On November 2, 2020, Gimeli and the Luxottica Parties stipulated to the dismissal of the Luxottica Parties' claims against Gimeli and

1

entry of a permanent injunction based on a settlement agreement. ECF No. 28. The Luxottica Parties renewed their motion for default judgment against the Wafa Ali Parties that same day. ECF No. 29. The Court held a status conference on November 5, 2020, at which the Court expressed concerns regarding the Luxottica Parties' claimed damages, scheduled a hearing on damages for December 14, 2020, and gave them two weeks to file a supplemental memorandum regarding damages. ECF No. 31. The Luxottica Parties filed their supplemental memorandum on November 20, 2020 and requested that the Court enter default and award damages in "any amount it deems fair based on the papers submitted" absent a hearing. ECF No. 32 at 6. On December 4, 2020, the Court cancelled the damages hearing and took the materials submitted by the Luxottica Parties under advisement. For the following reasons, the Luxottica Parties' renewed motion for default is GRANTED in part and DENIED in part.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs motions for default judgment and provides a two-step process. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504–05 (2d Cir. 2011). First, the plaintiff must obtain the clerk's entry of default. Fed. R. Civ. P. 55(a). Then, the plaintiff may apply for the entry of a default judgment to either the clerk or the Court depending on the relief requested. Fed. R. Civ. P. 55(b).

In evaluating whether to enter a default judgment, the Court accepts as true the well-pleaded factual allegations of the complaint relating to liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The Court must determine whether the plaintiff's well-pleaded allegations establish the defendant's liability as a matter of law. *Press Clean Sales, LLC v. Maxum Trans Inc.*, 233 F. Supp. 3d 360, 364 (E.D.N.Y. 2017) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011)). If liability is established, the Court assesses whether the plaintiff has established damages to a reasonable

certainty. *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Unlike allegations related to liability, allegations related to damages are not accepted as true. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the plaintiff must submit evidence to prove damages. *Belizaire v. Rav Investigative & Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014). "If a plaintiff fails to demonstrate its damages to a reasonable certainty, then the court should decline to award any damages, even where liability has been established through default." *Id.*

## BACKGROUND

The Luxottica Parties are owners of various Ray-Ban and Oakley trademarks (together, the "Marks") and manufacture and sell "premium, luxury and sports eyewear." ECF No. 1 ¶¶ 12, 15, 21. Wafa Ali, Inc., is a New York corporation with its principal place of business in Rochester, New York. *Id.* ¶ 7. Wafa Ali owns and operates Renee's Clothing, a retail store in Rochester, New York. *Id.* ¶ 25. Salah and Gimeli "are the owners, directors, and/or managing agents of Wafa Ali." *Id.* ¶ 28.

In May 2019, United States Customs and Border Protection seized sixty-one counterfeit Ray-Ban sunglasses that were bound for Renee's Clothing. ECF No. 29-2 ¶ 9, Ex. A. In June 2019, the Luxottica Parties dispatched a private investigator, Kevin Baker, to further investigate. *Id.* ¶ 10. At Renee's Clothing, Mr. Baker purchased three sunglasses bearing what appeared to be the Luxottica Parties' Marks. *Id.* ¶ 11. Mr. Baker saw at least sixteen sunglasses bearing the Marks displayed for sale. *Id.* An authentication expert later confirmed that the sunglasses Mr. Baker purchased were counterfeit based on the appearance of the Ray-Ban and Oakley logos, incorrect hardware, non-existent or fake serial numbers, and non-conforming cases and tags. *Id.* ¶ 12. The

counterfeit products had a total of ten unauthorized reproductions of the Marks (the "Counterfeit Marks"). *Id.* ¶ 13.

## DISCUSSION

### I. Liability

The Court first evaluates whether the Luxottica Parties' allegations, taken as true, establish liability as to the Wafa Ali Parties. *See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). The Luxottica Parties seek default for trademark infringement, false designation of origin, unfair competition under the Lanham Act, and New York common law. ECF No. 1 ¶¶ 34–58; ECF No. 29 at 10.

#### A. *Trademark Infringement*

"To prevail on a trademark infringement claim under the Lanham Act [§ 1114(1)(a)], the plaintiff must prove: (1) that it owns a valid, protectable trademark; (2) that the defendants used the registrant's trademark in commerce and without consent; and (3) that there was a likelihood of consumer confusion." *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 153 (E.D.N.Y. 2016) (internal quotation marks omitted). "Because the Lanham Act is a strict liability statute, a registrant need not prove knowledge or intent in order to establish liability." *Id.*

Plaintiffs have sufficiently alleged liability for trademark infringement. Specifically, they claim that they own the Ray-Ban and Oakley trademarks and that Wafa Ali, Inc. imported and sold counterfeit sunglasses bearing those trademarks.[1] ECF No. 1 ¶¶ 15–33. Further, because the counterfeit sunglasses bore reproductions of the Marks, there was a likelihood of consumer confusion. *See, e.g.*, *Innovation Ventures*, 176 F. Supp. 3d at 154 (noting that "counterfeit marks

---

[1] The Court notes that liability under § 1114(1)(a) attaches to "individuals responsible for the importation of counterfeit goods, even when the goods are seized at a port of entry and not distributed further." *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 748 (W.D. Tex. 2006).

4

are inherently confusing"); *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 437 (S.D.N.Y. 2020) (same). Finally, Plaintiffs have adequately alleged a connection between Saleh and the wrongful importation and sale of the counterfeit goods. *See Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007) (stating that a "corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active conscious force behind the defendant corporation's infringement" (internal quotation marks and brackets omitted)); ECF No. 1 ¶ 28 (alleging that Saleh was an "active, moving, conscious, force[] behind the alleged infringing activities").

B.   *False Designation of Origin and New York State Law*

The Lanham Act proscribes false designations of origin or, in other words, "misrepresentation[s] likely to cause confusion about the source of a product." *VOX Amplification Ltd. v. Meussdorffer*, 50 F. Supp. 3d 355, 366 (E.D.N.Y. 2014); 15 U.S.C. § 1125(a). "[I]t is well settled that the standards for false designation of origin claims . . . are the same as for trademark infringement claims . . . ." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002) (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986)). Likewise, the elements necessary to prevail on a claim for unfair competition under New York common law mirror federal Lanham Act claims. *Museum of Modern Art v. MOMACHA IP LLC*, 339 F. Supp. 3d 361, 372 (S.D.N.Y. 2018) ("The elements of a cause of action for New York common law infringement and for unfair competition mirror the requirements of claims stated under the Lanham Act." (cleaned up)); *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 266 (E.D.N.Y. 2014) (same). Because the Luxottica Parties have established trademark infringement in violation of the Lanham Act, the Luxottica Parties have also shown the Wafa Ali Parties' liability for false designation of origin and under New York common law.

C. *Lanham Act Unfair Competition*

In its motion for default judgment, the Luxottica Parties reference a claim for unfair competition under the Lanham Act, but the Luxottica Parties' complaint does not include a separate cause of action for unfair competition, ECF No. 1. "[T]here is no specific Federal cause of action for unfair competition." *Pot Luck, LLC v. Freeman*, No. 06-CV-10195, 2009 WL 693611, at *4 (S.D.N.Y. Mar. 10, 2009). "Instead[,] unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising." *Id.* (collecting authority). The Luxottica Parties have not cited any basis for liability for an unfair competition claim independent of their trademark infringement and false designation of origin claims. *See Sussman–Automatic*, 15 F. Supp. 3d at 272–73; *Tactica Int'l, Inc., v. Atl. Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 597 n.14 (S.D.N.Y. 2001). To the extent the Luxottica Parties seek independent liability under the Lanham Act for unfair competition, their motion for default is denied.

## II. Damages

Plaintiffs request (1) $2,500,000 in statutory damages,[2] (2) $58,904.11 in prejudgment interest, and (3) attorney's fees and costs (in an amount to be determined). ECF No. 29 at 3. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Moulton Masonry*, 779 F.3d at 189 (internal quotation marks and brackets omitted). Rule 55(b)(2) provides that "on the matter of damages the court may conduct such hearings or order such references as it deems necessary and proper." *Id.* (internal quotation marks omitted) "That rule allows but does not require the district judge to conduct a hearing." *Id.*

---

[2] In some of their submissions, the Luxottica Parties claim to be seeking $2 million in statutory damages. ECF No. 32 at 4–5.

*A.     Lanham Act Damages*

Under the Lanham Act, a plaintiff may elect to recover statutory damages for the unauthorized use of counterfeit trademarks. *See* 15 U.S.C. § 1117(c). The Court may, as it considers "just," award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold," unless the infringing use was willful, in which case the court may impose "not more than $2,000,000 per counterfeit mark per type of goods or services sold." *Id.* § 1117(c)(1), (2).

As an initial matter, Plaintiffs have sufficiently alleged that Defendants acted willfully, ECF No. 1 ¶¶ 28, 31–33, and by virtue of their default, the Wafa Ali Parties "are deemed to be willful infringers." *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011) (collecting cases). The Court may therefore impose the higher range of statutory damages. Plaintiffs request $2,500,000 in total statutory damages for the ten Marks used on the counterfeit sunglasses their investigator purchased from Defendants' store ($250,000 per mark). ECF No. 29 at 23–29; ECF No. 32 at 4–5. Based on the willfulness of the Wafa Ali Parties' infringement of these ten Marks, the Court may award statutory damages ranging from $10,000 to $20 million.

The Court has broad discretion in awarding statutory damages within that range. *Rolls–Royce PLC v. Rolls–Royce USA, Inc.*, 688 F. Supp. 2d 150, 156–57 (E.D.N.Y. 2010) (collecting cases). This is reflected in the wide array of damages courts have awarded for violations of § 1117(c). *See, e.g.*, *All-Star Mktg.*, 775 F. Supp. 2d at 624–25 (collecting cases); *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, No. 97-CV-4824, 1999 WL 33740332, at *6 (S.D.N.Y. Apr. 19, 1999) (collecting cases). This wide range of potential outcomes is reflected in counterfeit-product cases brought by Luxottica. *Luxottica Grp. S.p.A. v. Individual, P'ship or Unincorporated Ass'n*, No. 17-CV-61239, 2017 WL 9324773, at *6 (S.D. Fla. Dec. 15, 2017) (awarding $18,000 per mark);

*Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns*, No. 14-CV-9061, 2015 WL 3818622, at *3 (N.D. Ill. June 18, 2015) (awarding $50,000 per mark); *Luxottica Grp., S.p.A. v. 111 Pit Stop, Inc.*, No. 19-CV-15, 2020 WL 4287198, at *7 (M.D. Tenn. July 27, 2020) (awarding $100,000 per mark); *Luxottica Grp., S.p.A. v. Casa Los Martinez Corp.*, No. 14-CV-22859, 2014 WL 4948632, at *6 (S.D. Fla. Oct. 2, 2014) (awarding $200,000 per mark); *see also Luxottica Grp., S.p.A. v. Shore Enuff*, No. 16-CV-5847, 2019 WL 4027547, at *6–8 (D.N.J. Aug. 27, 2019) (awarding statutory damages totaling $38,000); *Luxottica Grp., S.p.A. v. Accessory Consultants LLC*, No. 19-CV-11732, 2020 WL 1910378, at *4–7 (D.N.J. Apr. 20, 2020) (awarding statutory damages totaling $750,000). Thus, one can find authority to support a vast range of awards. The case law merely confirms that courts have broad discretion to consider and weigh the circumstances in determining a just award.

To guide their determinations, courts in the Second Circuit consider the following factors in evaluating statutory damages under the Lanham Act:

> (1) the expenses saved and the profits reaped by defendant; (2) the revenues lost by plaintiff; (3) the value of the mark; (4) the scale of defendant's infringement; (5) whether defendant's conduct was innocent or willful; (6) whether defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging defendant and others.

*BBK Tobacco & Foods, LLP. v. Galaxy VI Corp.*, No. 17-CV-4079, 2020 WL 2833666, at *8 (S.D.N.Y. May 31, 2020) (internal quotation marks omitted).

A useful starting point is the existence and extent of actual damages. "Although statutory damages need not match actual damages, courts generally hold that statutory damages should bear some relation to actual damages suffered." *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 154 (E.D.N.Y. 2013) (internal quotation marks omitted). To be sure, one of the purposes of statutory damages is to ensure adequate compensation and

deterrence where there is insufficient information regarding the extent of actual damages. *See Tiffany (NJ) LLC v. Qi Andrew*, No. 10-CV-9471, 2015 WL 3701602, at *10 (S.D.N.Y. June 15, 2015). Proving actual damages may be difficult because counterfeiters "maintain sparse business records" and are "apt to default when faced with a federal trademark lawsuit." *Id.* at *9–10 (internal quotation marks omitted); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 110 (2d Cir. 2012) ("[In enacting § 1117(c),] Congress apparently sought to ensure that plaintiffs would receive more than *de minimis* compensation for the injury caused by counterfeiting as a result of the unprovability of actual damages despite the plain inference of damages to the plaintiff from the defendant's unlawful behavior."). Still, despite Congress's preference and the reality of inadequate information, it remains the case that statutory damages should be fixed in a manner that accounts for both "compensatory considerations (e.g., actual losses and trademark value)" and "punitive considerations (e.g., deterrence of other infringers and redress of wrongful defense conduct)." *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999); *see also Michael Kors, L.L.C. v. Canal Venture, Inc.*, No. 15-CV-5788, 2017 WL 4217152, at *2 (S.D.N.Y. Sept. 21, 2017) (noting that "statutory damages should incorporate both compensatory and punitive components"); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("To the extent possible statutory damages should be woven out of the same bolt of cloth as actual damages." (internal quotation marks omitted)).

For that reason, the Court's starting point is the extent of actual damages and the first two factors noted above: (1) the expenses saved and the profits reaped by defendant and (2) the revenues lost by plaintiff. Plaintiffs' investigator observed sixteen counterfeit sunglasses for sale at Renee's Clothing, and federal officials seized another sixty-one counterfeit sunglasses that were imported by Gimeli and bound for Renee's Clothing. ECF No. 29-2 ¶¶ 9, 11. Gimeli sold three

9

pairs to Plaintiffs' investigator at $30 each. *Id.* ¶ 11. There is no evidence that Defendants could have earned more than $2,310 from the sale of all of the known counterfeit sunglasses ($30 multiplied by the sixty-one sunglasses seized and the sixteen witnessed in Renee's Clothing). The Luxottica Parties further have not submitted information regarding the net profits the Wafa Ali Parties specifically earned from the sales. There is no evidence regarding the cost (to the Defendants) of the counterfeit sunglasses, and this analysis is further complicated by the presence of Gimeli, who appears to be the one who actually sold the sunglasses. *Id.* (noting that Gimeli stated that the owner of Renee's Clothing "allow[ed] him to sell his goods there"). It is unclear how Gimeli shared his profits, if at all, with the Wafa Ali Parties.

Of course, because the Wafa Ali Parties defaulted in the action, the full extent of their profits and the Luxottica Parties' losses is unknown, and any uncertainty should be resolved against the Wafa Ali Parties. *See Ideavillage Prods. Corp. v. Aarhus*, No. 18-CV-2739, 2019 WL 2290514, at *7 (S.D.N.Y. May 7, 2019) ("[T]he Court resolves any uncertainty in favor of [plaintiff] so as not to allow the Defaulting Defendants to benefit from their lack of participation in this litigation."), *adopted by* 2019 WL 2287726 (May 28, 2019). However, "[m]ost judges have issued awards far below the statutory maximum, particularly where the plaintiff does not have concrete information about the defendant's actual sales figures and profits." *Burberry Ltd. v. Euro Moda, Inc.*, No. 08-CV-5781, 2009 WL 4432678, at *5 (S.D.N.Y. Dec. 4, 2009) (collecting cases).

Further, the Luxottica Parties have shown that Ray-Ban or Oakley sunglasses retail for between $154 and $498 for an authentic pair, depending on the type of material and color of the frame and lens. *See* ECF No. 29-2 ¶ 14. Accordingly, at most, the Luxottica Parties would have lost revenues totaling $38,346 if each of the known counterfeits supplanted an actual sale. The Luxottica Parties have provided no evidence regarding the typical retail price of authentic versions

10

of the counterfeit sunglasses actually at issue here, the Luxottica Parties' typical profits for such sunglasses, or the price the Luxottica Parties typically charge to third-party retailers (which would allow the Court to calculate the expenses saved by the Defendants). The Court thus cannot conclude that this factor favors a substantial award of statutory damages.

With respect to the third factor—the value of the Marks—the Luxottica Parties have not provided evidence of the monetary value of the Marks but instead have shown that consumers widely associate the Marks with high quality. ECF No. 29-2 ¶¶ 3, 5, 8, 16. The Court "can infer from the well-known reputations of most or all of the trademarks and the sea of advertising that presses them on the consciousness of the buying public that they are indeed valuable." *N. Face Apparel Corp. v. Moler*, No. 12-CV-6688, 2015 WL 4385626, at *6 (S.D.N.Y. July 16, 2015) (internal quotation marks omitted).

The fourth factor weighs in favor of the Wafa Ali Parties. The actual scale of Defendants' operation appears modest. The Luxottica Parties presented evidence of only one location at which the items bearing the Marks were sold. And unlike in many cases involving more extensive trademark infringement operations, there is no evidence that the Defendants here maintained any form of an online presence. *See, e.g., id.*, at *6 (noting evidence that infringer was in business for three years and sold over $1.5 million on eBay). Where the scale of the infringement is modest and there is no evidence regarding its profitability, a modest award of damages is appropriate. *See BBK Tobacco & Foods*, 2020 WL 2833666, at *9; *Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2012 WL 1255276, at *3 (S.D.N.Y. Apr. 13, 2012) ("[A] plaintiff should not reap a windfall multi-million dollar award from the actions of a single small-scale infringer.").

With respect to the fifth factor, the Luxottica Parties have shown that the Wafa Ali Parties' infringement was willful. Further, because the Wafa Ali Parties has failed to participate in this suit,

they have not willingly provided any records from which the value of the infringing materials could be assessed, and the sixth factor supports a substantial award. With respect to the seventh factor, the Court does not doubt that an award of $2,500,000 would deter the Wafa Ali Parties and others who might consider infringing on Luxottica Parties' marks in the future. However, "[when] determining the quantum of damages necessary to deter a defendant from future infringement, the key consideration is the persistence of defendant's defiance of the requirements of the Lanham Act and of prior court orders enjoining further infringements." *BBK Tobacco & Foods*, 2020 WL 2833666, at *11 (internal quotation marks and brackets omitted). There is no evidence that the Wafa Ali Parties violated any "prior court orders enjoining further infringements." *Id.* (internal quotation marks omitted). That said, there is a general "policy of deterrence of willful infringement that is built into the statutory damages scheme." *O'Brien*, 2012 WL 1255276, at *4.

Where "there is minimal evidence of actual harm to plaintiff and the defendant appears to have limited financial means, a more modest sum will typically serve both as a specific deterrent for Defendant and a general deterrent for others contemplating the infringement of valid trademarks." *BBK Tobacco & Foods*, 2020 WL 2833666, at *11 (internal quotation marks and citations omitted) (collecting cases). "Most judges have issued awards far below the statutory maximum, particularly where the plaintiff does not have concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue and defendant's profits is not in the millions of dollars." *Burberry*, 2009 WL 4432678, at *5 (collecting cases).

The Luxottica Parties have not submitted evidence that justifies an award of $2,500,000 in statutory damages. Based on the Wafa Ali Parties' willfulness, an award of $4,000 for each counterfeited Mark, four times the statutory minimum, "should provide sufficient deterrence by

12

denying defendants the fruits of their wrongful conduct while at the same time compensating plaintiffs for whatever damage their marks may have suffered by virtue of the distribution of counterfeit items through the premises in question." *Polo Ralph Lauren, L.P. v. 3M Trading Co.*, No. 97-CV-4824, 1999 WL 33740332, at *7 (S.D.N.Y. Apr. 19, 1999).[3] Based on the evidence presented, particularly the dearth of evidence regarding the Wafa Ali Parties' culpability, statutory damages totaling $40,000, which mirrors the Luxottica Parties' maximum possible losses for the known counterfeits, appropriately balances the relevant considerations. *Ideavillage*, 2019 WL 2290514, at *8 (approving $50,000 in statutory damages for defaulting defendants that sold less than 100 counterfeit products); *Shore Enuff*, 2019 WL 4027547, at *6–8 (awarding statutory damages totaling $38,000).

The Luxottica Parties' argue that a greater award is warranted. ECF No. 32. The cases they cite, however, are inapposite. Those cases involve evidence of infringement that was significantly more widespread than the present case, often by way of online marketplaces. In a case in which $750,000 in statutory damages were awarded, the offending party had "an in-stock inventory of at least $230,000 in goods and an elaborate production operation." *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999). The most analogous case cited by the Luxottica Parties involved the production of a color catalog and sales of approximately $11,000 worth of counterfeit goods. *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 503, 505 (S.D.N.Y. 2009). In that case, the court awarded statutory damages totaling $400,000 ($100,000 per infringed trademark). *Id.* at 505.

---

[3] Although the Court recognizes that there are some limitations in assessing statutory damages on a per-mark basis, *see Rolex Watch U.S.A., Inc. v. Brown*, No. 01-CV-9155, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002) (fashioning statutory damage award that serves compensatory and punitive goals but declining to include "multiplication for multiple Rolex marks"), the Court finds that doing so here leads to a just result that appropriately balances the relevant considerations.

There is no evidence here, however, that the Wafa Ali Parties were involved in such an extensive operation, and in fact, the evidence appears to suggest that Gimeli is the party primarily at fault for the infringement at issue. *See* ECF No. 29-2 ¶ 9 (noting the counterfeit products shipped to Renee's Clothing were "imported by Defendant Gimeli"); ECF No. 29 at 17 (noting that "Gimeli . . . has already been arrested and criminally convicted of trafficking large quantities of counterfeit products in violation of 18 U.S.C. § 2320(a)(1)"). The Luxottica Parties have not shown that the Wafa Ali Parties have done any more than allowed some counterfeit products to be sold by Gimeli out of a single brick-and-mortar store, and there is no evidence that the enterprise was particularly extensive. *See Holt's Co. v. Hoboken Cigars, LLC.*, No. 09-CV-3782, 2010 WL 4687843, at *2–4 (D.N.J. Nov. 10, 2010) (finding lower statutory damages warranted where defendants' estimated profit was "quite low" and would have had a minimal impact on plaintiff's revenue). Nevertheless, the Wafa Ali Parties' failure to participate in this action has created significant uncertainty. That uncertainty justifies a statutory damage award of $40,000, but no more. *See Coach, Inc. v. Treasure Box, Inc.*, No. 11-CV-468, 2014 WL 888902, at *3–4 (N.D. Ind. Mar. 6, 2014) (awarding $45,000 in statutory damages where the total retail value of counterfeit goods found for sale in a brick-and-mortar store was "less than $3,000"). The Luxottica Parties' request for statutory damages is accordingly GRANTED in the amount of $40,000.

B.   *Attorneys' Fees and Costs*

The Luxottica Parties also seek to recover attorneys' fees and costs. Under the Lanham Act, a court may award attorneys' fees in exceptional circumstances. 15 U.S.C. § 1117(a). "Willful infringement by itself does not entitle a plaintiff to recover attorney's fees." *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 522 (S.D.N.Y. 2019) (citing *4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 216 (2d Cir. 2019)). Instead, the Supreme Court, in *Octane*

*Fitness, LLC v. ICON Health & Fitness, Inc.*, explained that an exceptional circumstance is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." 572 U.S. 545, 554 (2014). The Supreme Court left this determination to the discretion of district courts, "considering the totality of the circumstances." *Id.*

In consideration of "the totality of the circumstances," the Court finds that the Luxottica Parties have not proven the present circumstances to be exceptional. *Id.* at 554. Aside from the Wafa Ali Parties' default, which standing alone is insufficient to demonstrate the exceptionality of these circumstances, the Luxottica Parties have failed to demonstrate that the Wafa Ali Parties' conduct was exceptional. *See Am. Infertility of N.Y., P.C. v. Deep Blue Health N.Z. Ltd.*, No. 17-CV-5666, 2019 WL 10786023, at *9 (S.D.N.Y. Dec. 30, 2019) ("[R]ecent decisions in th[e Second] Circuit, relying on *Octane Fitness*, concluded that the mere fact of a defendant's default does not automatically render a case exceptional under [an analogous provision of the Patent Act]."), Accordingly, the Luxottica Parties' request for attorneys' fees is DENIED.

A Court, however, is not subject to the same "exceptional case[]" restriction found in § 1117(a) in awarding costs. The Luxottica Parties' are entitled to recoup "the costs of the action" 15 U.S.C. § 1117(a); *see also Shore Enuff*, 2019 WL 4027547, at *9 (declining to award attorneys' fees in similar case, but permitting plaintiff to recover costs). Accordingly, the Luxottica Parties' requests for costs is GRANTED.

### C. Prejudgment Interest

The Luxottica Parties argue that they are entitled to prejudgment interest under the Lanham Act. ECF No. 29 at 30. While the Lanham Act does not provide for prejudgment interest, courts have discretion to award prejudgment interest in exceptional circumstances. *See Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 263–64 (2d Cir. 2014). The Second Circuit has drawn "no

distinctions" between the requirements for an award of attorney's fees and an award of prejudgment interest. *See 4 Pillar Dynasty*, 933 F.3d at 216; *see also Shore Enuff*, 2019 WL 4027547, at *8 (declining to award prejudgment interest). Accordingly, the Luxottica Parties' request for prejudgment interest is DENIED.

## III. Injunctive Relief

"A permanent injunction is appropriate where the party seeking the injunction has succeeded on the merits and shows the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011) (internal quotation marks and brackets omitted). The Luxottica Parties have already demonstrated actual success on the merits because they have established that the Wafa Ali Parties have participated in counterfeiting activities in violation of the Lanham Act. *See Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 459 (S.D.N.Y. 2005); *Rolls–Royce*, 688 F. Supp. 2d at 159 ("Actual success on the merits is shown by virtue of the defendant's default.").

The Luxottica Parties argue that they have suffered irreparable harm. ECF No. 29 at 31. The Court agrees. Where there exists a likelihood of confusion between the counterfeit mark and the actual mark, there is irreparable harm. *See Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 376 (S.D.N.Y. 2020). The Luxottica Parties have established a likelihood of confusion and have accordingly shown irreparable harm.

The Luxottica Parties further lack an adequate remedy at law. In cases where confusion leads to a damage of reputation "monetary damages are . . . unlikely to present an adequate remedy at law." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 296 (E.D.N.Y. 2009) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)); *see also Spin Master*, 463 F. Supp. 3d at 376 ("Monetary damages are also inadequate to compensate Plaintiffs for the

16

reputational harm they have suffered and may continue to suffer."). Here, the Luxottica Parties have presented evidence of reputational damage that is not easily quantifiable and for which there is no adequate remedy at law. ECF No. 29-2 ¶ 6. A permanent injunction is accordingly warranted as set forth below.[4]

## CONCLUSION

The Luxottica Parties' motion for default, ECF No. 29, is GRANTED in part and DENIED in part. Plaintiffs are awarded $40,000 in statutory damages and costs. By July 21, 2021, Plaintiffs shall file a verified Bill of Costs with the Clerk of Court. Plaintiffs' requests for prejudgment interest and attorney's fees are DENIED. Plaintiffs' request for a permanent injunction is GRANTED in part and DENIED in part. Ali Saleh and Wafa Ali, Inc. are permanently enjoined as follows:

1. From taking any actions that infringe upon U.S. Registered Trademark Nos. 650,499; 1,093,658; 1,320,460; 3,522,603; 1,980,039; 1,990,262; 1,521,599; 3,153,943; 1,980,039; 1,990,262; 3,331,124; 1,927,106; and 1,984,501, as shown in the Complaint, ECF No. 1, (the "Ray-Ban and Oakley Marks").

2. Prohibited acts include, but are not limited to:

    a. Manufacturing, advertising, marketing, promoting, supplying, offering for sale, and/or selling products that bear unauthorized reproductions of any Ray-Ban or Oakley Marks, or any marks identical, substantially similar, and/or confusingly similar to any Ray-Ban or Oakley Marks;

    b. Representing that the Wafa Ali Parties are licensed, authorized, or sponsored by Plaintiffs with respect to any product bearing one or more unauthorized reproductions of any Ray-Ban or Oakley Marks; and

    c. Assisting, aiding, or attempting to help other individuals or entities to infringe any Ray-Ban and Oakley Marks or to perform any of the prohibited activities set forth above.

---

[4] The Luxottica Parties requested that the Court enjoin certain additional conduct. ECF No. 29-3 at 2. The Luxottica Parties have not shown that the additional terms requested are warranted. A permanent injunction should be "no broader than necessary to cure the effects of the harm caused." *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 750 (2d Cir. 1994) (internal quotation marks omitted).

The Clerk of Court is directed to enter judgment and close this case.

    IT IS SO ORDERED.

Dated: June 21, 2021
       Rochester, New York

                                                         HON. FRANK P. GERACI, JR.
                                                                    Chief Judge
                                                             United States District Court